FseemAN, J.,
delivered the opinion of the Court.
In 1867, suit was brought in the Circuit Court of Lincoln County, by plaintiff, against Thomas J. Massey, administrator of John B. Massey, deceased, M. D. Hampton, Jacob Anthony, and J. G. "Woods, upon a lost bill of exchange, drawn by John E. Massey, and indorsed by the other defendants, for $1,600. The bill was drawn on S.
O. Nelson & Co., New-Orleans, at four months, and dated February 28, 1861.
Defendants pleaded non assumpsit and payment, and the indorsers put in the further plea of want of notice of protest.
Upon the trial, verdict and judgment were for the defendants, and the plaintiff appealed in error to this Court.
The record shows that plaintiff held another bill of exchange on Massey, indorsed by the same parties, except Anthony, payable' in' Mobile, Ala., at four months, and dated November 1, 1860, upon which a balance of $19.35 was still due in March 1861, and that these two bills were *363 placed in the hands of Lester & Ward, attorneys at law, of Pulaski, Tenn., by the plaintiffs, for collection.
In January, 1862, Lester & Ward sent them to the law firm of Bright & Bright, at Fayetteville, with instructions to bring suit upon them. In 1862, Bright & Bright left the State temporarily, and turned over their office and papers, including the bills of exchange, to Stephens, a young-lawyer of Fayetteville; and plaintiff insisted and offered to prove that Bright & Bright were instructed by Lester & Ward to take judgment, but not to collect. This was objected to by defendants, and excluded by the Court.
D. P. Holman,' a witness for the defendants, testifies that, in the latter part of 1862, or first part of 1863, he was present looking after the interest of Anthony, one of the indorsers of the bill sued on, when John R. Massey, Stephens, and a third person, whom he did not know, went into a room together. Massey came out, and in the presence of Stephens, asked witness to loan him $20 in State Bank money, to pay the balance on a bill of exchange. Witness loaned him the money. That when witness, Stephens, Massey, ’and the third person, all came out together, Massey had the bills, and showed them to witness, and said: “now I reckon your pains will be easy;” and he, Massey, then went and showed the bills to Woods. Witness looked at the bills, and one of them had more names than the other; Anthony’s name was on one, and Woods’ name on both of them.
This testimony was objected to by plaintiff, but the objection was overruled by the Court, and the testimony allowed to go to the jury. And it is insisted in argument, that it was improperly admitted, because it was irrelevant, *364 and did not identify either of the bills as being the one sued on in this action.-.
We do not think this objection is well taken.' While it is a well established rule that evidence must correspond with the allegations, and be confined to the points in issue in the cause, it is not necessary that it should bear directly upon the issue. It is admissible, if it tends to prove the issue, or constitutes a link, in the chain of proof, although alone it might not justify a verdict in accordance with it. 1. Green, Ev., § 51, a.
So it is admissible to show any facts in a case, from which a reasonable inference as to the principal facts, or matter in dispute, may be drawn. Tested by these rules, we are of opinion that th,e evidence objected to was not inadmissible upon the ground of its irrelevancy.
But it is further insisted, that, even if the fact of payment had been satisfactorily shown by competent evidence to have been made to Stephens, that it could not avail defendants, as Stephens had no authority to receive payment of the bill.
It is a general maxim, applicable alike to general and special agencies, that when power is conferred to do an act, or to accomplish a particular purpose, the authority given carries with it the right to use such means and measures ■ as are appropriate to its performance. An agency to do an act necessarily embraces all the incidents required to render such act complete.
So it has been held by this Court, that an agency to sell includes an' agency to receive payment; and that where a party appointed an agent to sell merchandise, without power to receive payment, but.with express instructions *365 not to receive payment, the purchaser might pay the price of the merchandise to the agent, without being affected by the principal’s secret instructions to him, unless said instructions were communicated to the purchaser before the payment: 5 Sneed, 469.
So also, in 5 Hum., 365, it was held that an agent to sell horses for the best price he could get, and return the proceeds to his principal, had power to sell not only for cash, but to sell upon credit, if such was the course of trade in the market. We hold, therefore, that the power to sue for a debt implies and carries with it the power to collect it; and that the attorney in whose hands it may have been originally placed for collection, might place such claims in the hands of other attorneys for the purpose of bringing suit, where it was impracticable or inconvenient for the original attorneys to attend personally to the case; and the attorneys might use such suitable means or agencies as they saw fit to employ, if such was. the usage and custom, or if it was understood by the parties to be the mode in which the business would or might be conducted. And this right might also be well sustained upon the implied authority of the agent to use all mediate powers, and appropriate measures for the execution of the power conferred. And no secret instructions, to any of the attorneys, not communicated to the debtor, would affect the validity of his payment of the debt to the agent-
It is, therefore, not strictly correct to say that a special agent can exercise no power, not expressly conferred; for to almost all granted powers, there are others incident, reasonably to be implied from the nature of the particular business.
*366 The testimony of Todd, as to the bills of exchange that Massey showed him at the house of Kercheval, and his description of them, and that they were burnt,, we think was properly admitted by the Court, to be considered of by the jury, in connection with the other testimony in the cause.
So the testimony of Wilson, that he had paid Massey $1,600, in the latter part of 1862 or first of 1863, for a negro, was competent, as showing his means to pay the debt sued on. This fact, of itself, is, of course, not proof of payment; still, it may constitute a link - in the chain of proof, and it was, therefore, properly admitted to go to the jury.
The admission of the testimony of Holman, that Massey, in the presence of Stephens, and before he came out of the room with the bills of exchange, asked witness to loan him $20, in State Bank money, to pay the balance on a bill of exchange, and that he loaned him the money, was also objected to by plaintiffs. We do not think, in view of the circumstances then existing, that the admission of this evidence was erroneous. It may be inferred that some transactions were being had at the time between Massey and Stephens' and the third person, and that in furtherance of that transaction, and in the presence of Stephens, the application to borrow the $20 was made to witness. It is the province of the jury to determine, from all the evidence in the case, whether what transpired had any connection with the payment of the bill sued on.
Exceptions were also taken to the testimony of Cowan and McElroy as to the testimony of James It. Bright, *367 deceased, who was examined upon a former trial of this cause. Each of said witnesses stated that he could not detail all the testimony of Bright, but could state the substance of what he said in relation to turning over the papers of his office to Stephens, which they proceed to detail. The objection taken to this evidence was, that the witness could not detail the substance of the whole testimony. The rule upon this subject has been much relaxed. Formerly, a witness was required to repeat the precise words of the deceased witness. Now, however, it is only required that the substance of such testimony shall be given; and it is not even required that he should be able to give the substance of the whole testimony, but only the substance of what was said on the particular subject which he is called to prove. 1 Greenl. Ev., § 165; 10 Hum., 479. It is fairly to be inferred, from the examination of these two witnesses, that they were called upon to prove only the testimony of the deceased witness in relation to his turning over the papers of Bright & Bright, he being a member of said firm, to Stephens; and this they both say they are able to state in substance, and proceed to do so. There was, therefore, no error in admitting their testimony on this point.
Defendants were allowed, against the objection of the plaintiffs, to prove by the witness, Holman, that John R. Bright told him that he would leave the bills of exchange with Stephens, a young attorney in the town of Fayetteville. This evidence being the mere declaration of Bright of an intention to do an act in future, was not strictly admissible; but it having been proved by two witnesses, that Bright had stated, upon his examination *368 in tlie former trial, that he had left them with Stephens, and there being no conflict in the evidence upon this point, we can see that the plaintiff was not prejudiced by it, and we can not reverse for this error.
The testimony of Cowan was also irrelevant, and should have been rejected. He stated that Massey applied to him to borrow $1,000, to pay off a bill in Pulaski, but he did not get the money; and afterwards, Massey told him he had raised the money in another manner. Nothing in this transaction could raise any presumption of the payment of the bills; and although this testimony was improperly admitted, it was not calculated to mislead the jury, and could not have influenced their verdict.
Charles Wilson was allowed to testify, against the objection of plaintiff, that Massey sold him a negro in the latter part of 1862, or early part of 1863, for $1,600, to pay a bill, as he understood from him, in the hands of Bright & Bright. It was legitimate for defendants to show that money had been raised about the time of the alleged payment of the bills, and also to show for what purpose it was raised. “Where a party does any act material to be understood, his declarations, made at the time of the transaction, and expressive of its character, motive or object, are regarded as verbal acts, indicating a present purpose and intention; and are, therefore, admitted in evidence, like any other material facts.” 1 Grcenl. Ev., § 108. “So, in a suit for enticing away a servant, his declarations at the time of leaving his master are admissible as part of the res gestee, to show the motive of his departure.” 1 bid, § 108, note 2. We, therefore, hold *369 that, in the admission of this testimony there was no error.
Upon a careful examination of the whole case, we are satisfied that no material errors have been committed to the prejudice of the plaintiff; and we affirm the judgment of the Circuit Court.